# Exhibit A

## PROMISSORY NOTE

---

### LOAN TERMS TABLE

**Lender**: Cogar Ventures LLC, a Delaware limited liability company
**Lender's Address**: 755 N Alfred St. Unit D, Los Angeles, California 90046
**Borrower**: Terri Kraut-Karasick and Yitzchok Karasick, jointly and severally
**Borrower's Address**: 75 Thames Blvd, Bergenfield, NJ 07621
**Property**:  Real property located at 75 Thames Blvd, Bergenfield, NJ 07621
**Closing Date**: November **3** , 2025
**Original Principal Amount**: $300,000.00
**Maturity Date**: January 2, 2026
**Loan Fee**: $30,000.00

---

1.      **Loan Amount and Rate.** FOR VALUE RECEIVED, Borrower promises to pay to the order of Lender, the Original Principal Amount (or so much thereof as is outstanding from time to time, which is referred to herein as the "**Outstanding Principal Balance**" or "**OPB**") evidenced by this Promissory Note ("**Note**") plus the Loan Fee.  The above Loan Terms Table (hereinafter referred to as the "**Table**") is a part of the Note and all terms used in this Note that are defined in the Table shall have the meanings set forth therein.

2.      **Principal and Interest Payments.** The Outstanding Principal Balance, the Loan Fee, and all other amounts owed to Lender pursuant to this Note or the Security Instrument (as hereinafter defined) or otherwise in connection with the Loan or the security for the Loan shall be due and payable on the Maturity Date.

3.      **Security for Note.**  This Note is secured by a mortgage (the "**Security Instrument**") encumbering the Property.  The remedies of Lender as provided in this Note or under applicable law shall be cumulative and concurrent, may be pursued singularly, successively, or together at the discretion of Lender, and may be exercised as often as the occurrence of an occasion for which Lender is entitled to a remedy under the Security instrument or applicable law. The failure to exercise any right or remedy shall not be construed as a waiver or release of the right or remedy with respect to an Event of Default or any subsequent default.

4.      **Intentionally Omitted.**

5.      **Payments.** All amounts payable hereunder shall be payable in lawful money of the United States of America to Lender at Lender's Address or such other place as the holder hereof may designate in writing.

6.      **Intentionally Omitted.**

7.      **Default Rate.** If Borrower shall fail to make full payment on the Maturity Date, Lender shall be entitled to receive and Borrower shall pay interest on the Outstanding Principal Balance at the rate of five percent (5%) per annum ("**Default Rate**") but in no event greater than the Maximum Legal Rate (as hereinafter defined).  Such accrued interest shall be added to the Outstanding Principal Balance, and interest shall accrue thereon at the Default Rate until fully

106884497.1

paid. Such accrued interest shall be secured by the Security Instrument. Borrower agrees that Lender's right to collect interest at the Default Rate is given for the purpose of compensating Lender at reasonable amounts for Lender's added costs and expenses that occur as a result of Borrower's default and that are difficult to predict in amount, such as increased general overhead, concentration of management resources on problem loans, and increased cost of funds. Lender and Borrower agree that Lender's collection of interest at the Default Rate is not a fine or penalty, but is intended to be and shall be deemed to be reasonable compensation to Lender for increased costs and expenses that Lender will incur if there occurs an Event of Default hereunder. Collection of interest at the Default Rate shall not be construed as an agreement or privilege to extend the Maturity Date or to limit or impair any rights and remedies of Lender under the Security Instrument. If judgment is entered on this Note, interest shall continue to accrue post-judgment at the greater of (a) the Default Rate or (b) the applicable statutory judgment rate. As used herein, the term "**Maximum Legal Rate**" shall mean the maximum nonusurious interest rate, if any, that at any time or from time to time may be contracted for, taken, reserved, charged or received on the indebtedness evidenced by the Note and as provided for herein or the Security Instrument, under the laws of such state or states whose laws are held by any court of competent jurisdiction to govern the interest rate provisions of the Loan.

8. **Origination, Administration, Enforcement, and Defense Expenses**. Borrower shall pay Lender, on demand, all Administration and Enforcement Expenses (as hereinafter defined) now or hereafter incurred by Lender, together with interest thereon at the Default Rate, from the date paid or incurred by Lender until such fees and expenses are paid by Borrower, whether or not an Event of Default or Default then exists. For the purpose of this Note, "**Administration and Enforcement Expenses**" shall mean all fees and expenses incurred at any time or from time to time by Lender, including legal (whether for the purpose of advice, negotiation, documentation, defense, enforcement or otherwise), accounting, financial advisory, auditing, rating agency, appraisal, valuation, title or title insurance, engineering, environmental, collection agency, or other expert or consulting or similar services, in connection with: (a) the origination of the Loan, including the negotiation and preparation of the Note and the Security Instrument and any amendments or modifications of the Loan or the documents, whether or not consummated; (b) the administration, servicing or enforcement of the Loan, including any request for interpretation or modification of the Security instrument or any matter related to the Loan or the servicing thereof (which shall include the consideration of any requests for consents, waivers, modifications, approvals, lease reviews or similar matters and any proposed transfer of the Property or any interest therein), (c) any litigation, contest, dispute, suit, arbitration, mediation, proceeding or action (whether instituted by or against Lender, including actions brought by or on behalf of Borrower or Borrower's bankruptcy estate or any indemnitor or guarantor of the Loan or any other person) in any way relating to the Loan or the Security instrument including in connection with any bankruptcy, reorganization, insolvency, or receivership proceeding; (d) any attempt to enforce any rights of Lender against Borrower or any other person that may be obligated to Lender by virtue of any Loan Document or otherwise whether or not litigation is commenced in pursuance of such rights; and (e) protection, enforcement against, or liquidation of the Property or any other collateral for the Loan, including any attempt to inspect, verify, preserve, restore, collect, sell, liquidate or otherwise dispose of or realize upon the Loan, the Property or any other collateral for the Loan. All Administration and Enforcement Expenses shall be additional Debt hereunder secured by the Property, and may be funded, if Lender so elects, by Lender paying the same to the appropriate persons and thus making an advance on Borrower's behalf.

2

9.     **Intentionally Omitted.**

10.     **Maximum Rate Permitted by Law.** All agreements in this Note and the Security Instrument are expressly limited so that in no contingency or event whatsoever, whether by reason of acceleration of maturity of the indebtedness evidenced hereby or otherwise, shall the amount agreed to be paid hereunder for the use, forbearance, or detention of money exceed the Maximum Legal Rate. If, from any circumstance whatsoever, fulfillment of any provision of this Note or the Security Instrument at the time performance of such provision shall be due shall involve exceeding the Maximum Legal Rate, then, _ipso facto_, the obligations to be fulfilled shall be reduced to allow compliance with the Maximum Legal Rate, and if, from any circumstance whatsoever, Lender shall ever receive as interest an amount that would exceed the Maximum Legal Rate, the receipt of such excess shall be deemed a mistake and shall be canceled automatically or, if theretofore paid, such excess shall be credited against the principal amount of the indebtedness evidenced hereby to which the same may lawfully be credited, and any portion of such excess not capable of being so credited shall be refunded immediately to Borrower.

11.     **Events of Default; Acceleration of Amount Due.** Upon the occurrence of an Event of Default, Lender may in its discretion, without notice to Borrower, declare the entire Debt, including the Outstanding Principal Balance, the Loan Fee, all accrued interest, all costs, expenses, charges and fees payable under the Security Instrument, and Lender shall have all remedies available to it at law or equity for collection of the amounts due.

12.     **Time of Essence.** Time is of the essence with regard to each provision contained in this Note.

13.     **Intentionally Omitted.**

14.     **Intentionally Omitted.**

15.     **Severability.** The terms of this Note are severable, and should any provision be declared by a court of competent jurisdiction to be invalid or unenforceable, the remaining provisions shall, at the option of Lender, remain in full force and effect and shall in no way be impaired.

16.     **Borrower's Waivers.** Borrower and all others liable hereon hereby waive presentation for payment, demand, notice of dishonor, protest, and notice of protest, notice of intent to accelerate, and notice of acceleration, stay of execution and all other suretyship defenses to payment generally. No release of any security held for the payment of this Note, or extension of any time periods for any payments due hereunder, or release of collateral that may be granted by Lender from time to time, and no alteration, amendment or waiver of any provision of this Note or the Security Instrument, shall modify, waive, extend, change, discharge, terminate or affect the liability of Borrower and any others that may at any time be liable for the payment of this Note or the performance of any covenants contained in the Security Instrument.

17.     **Governing Law, Jurisdiction and Venue.** This Note shall be governed under the laws of the State of _____.

18.     **Intentionally Omitted.**

3

106884497.1

19.    **Notices.**  All notices, consents, approvals and requests required or permitted hereunder or under any other Loan Document shall be given in writing and shall be effective for all purposes if hand delivered or sent by (a) certified or registered United States mail, postage prepaid, return receipt requested or (b) expedited prepaid delivery service, either commercial or United States Postal Service, with proof of attempted delivery, or (c) by telecopier (with answer back acknowledged) and with a second copy to be sent to the intended recipient by any other means permitted under this Section, addressed as set forth in the Terms (or at such other address and Person as shall be designated from time to time by any party hereto, as the case may be, in a written notice to the other parties hereto in the manner provided for in this Section).

A notice shall be deemed to have been given:  in the case of hand delivery, at the time of delivery; in the case of registered or certified mail, when delivered or the first attempted delivery on a Business Day; or in the case of expedited prepaid delivery, upon the first attempted delivery on a Business Day; or in the case of telecopy, upon sender's receipt of a machine-generated confirmation of successful transmission after advice by telephone to recipient that a telecopy notice is forthcoming.

20.    **Intentionally Omitted.**

21.    **Intentionally Omitted.**

22.    **Miscellaneous.**  Neither this Note nor any of the terms hereof, including the provisions of this Section, may be terminated, amended, supplemented, waived or modified orally, but only by an instrument in writing executed by the party against which enforcement of the termination, amendment, supplement, waiver or modification is sought, and the parties hereby: (a) expressly agree that it shall not be reasonable for any of them to rely on any alleged, non-written amendment to this Note; (b) irrevocably waive any and all right to enforce any alleged, non-written amendment to this Note; and (c) expressly agree that it shall be beyond the scope of authority (apparent or otherwise) for any of their respective agents to agree to any non-written modification of this Note.  This Note may be executed in several counterparts, each of which counterpart shall be deemed an original instrument and all of which together shall constitute a single Note.  The failure of any party hereto to execute this Note, or any counterpart hereof, shall not relieve the other signatories from their obligations hereunder.  If Borrower consists of more than one person or entity, then the obligations and liabilities of each person or entity shall be joint and several and in such case, the term "Borrower" shall mean individually and collectively, jointly and severally, each Borrower.  As used in this Note, (i) the terms "include," "including" and similar terms shall be construed as if followed by the phrase "without being limited to," (ii) any pronoun used herein shall be deemed to cover all genders, and words importing the singular number shall mean and include the plural number, and vice versa, (iii) all captions to the Sections hereof are used for convenience and reference only and in no way define, limit or describe the scope or intent of, or in any way affect, this Note, (iv) no inference in favor of, or against, Lender or Borrower shall be drawn from the fact that such party has drafted any portion hereof or any other Loan Document, (v) the words "Lender" and "Borrower" shall include their respective successors (including, in the case of Borrower, any subsequent owner or owners of the Property or any part thereof or any interest therein and Borrower in its capacity as debtor-in-possession after the commencement of any bankruptcy proceeding), assigns, heirs, personal representatives, executors and administrators, (vi) the term "or" has, except where otherwise indicated, the inclusive meaning

4

106884497.1

represented by the phrase "and/or," (vii) the words "hereof," "herein," "hereby," "hereunder," and similar terms in this Note refer to this Note as a whole and not to any particular provision or section of this Note, (viii) an Event of Default shall "continue" or be "continuing" until such Event of Default has been waived in writing by Lender, and (ix) in the computation of periods of time from a specified date to a later date, the word "from and including" and the words "to" and "until" each means "to but excluding." Wherever Lender's judgment, consent, approval or discretion is required under this Note or Lender shall have an option, election, or right of determination or any other power to decide any other matter relating to the terms of this Note, including any right to determine that something is satisfactory or not ("**Decision Power**"), such Decision Power shall be exercised in the sole and absolute discretion of Lender except as may be otherwise expressly and specifically provided herein. Such Decision Power and each other power granted to Lender upon this Note or any other Loan Document may be exercised by Lender or by any authorized agent of Lender (including any servicer or attorney-in-fact), and Borrower hereby expressly agrees to recognize the exercise of such Decision Power by such authorized agent. In the event of a conflict between or among the terms, covenants, conditions or provisions of the Security Instrument, the term(s), covenant(s), condition(s) or provision(s) that Lender may elect to enforce from time to time so as to enlarge the interest of Lender in its security, afford Lender the maximum financial benefits or security for the Debt, or provide Lender the maximum assurance of payment of the Debt in full shall control. BORROWER ACKNOWLEDGES AND AGREES THAT IT HAS BEEN PROVIDED WITH SUFFICIENT AND NECESSARY TIME AND OPPORTUNITY TO REVIEW THE TERMS OF THIS NOTE, THE SECURITY INSTRUMENT, AND EACH OF THE SECURITY INSTRUMENT, WITH ANY AND ALL COUNSEL IT DEEMS APPROPRIATE, AND THAT NO INFERENCE IN FAVOR OF, OR AGAINST, LENDER OR BORROWER SHALL BE DRAWN FROM THE FACT THAT EITHER SUCH PARTY HAS DRAFTED ANY PORTION HEREOF, OR THE SECURITY INSTRUMENT, OR ANY OF THE SECURITY INSTRUMENT.

23. **Waiver of Counterclaim and Jury Trial.** BORROWER HEREBY KNOWINGLY WAIVES THE RIGHT TO ASSERT ANY COUNTERCLAIM, OTHER THAN A COMPULSORY COUNTERCLAIM, IN ANY ACTION OR PROCEEDING BROUGHT AGAINST BORROWER BY LENDER OR ITS AGENTS. ADDITIONALLY, TO THE FULLEST EXTENT NOW OR HEREAFTER PERMITTED BY APPLICABLE LAW, BORROWER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON THE LOAN OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH THE LOAN, THIS NOTE, THE SECURITY INSTRUMENT, OR ANY OTHER LOAN DOCUMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN), OR ACTION OF BORROWER OR LENDER. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER'S MAKING OF THE LOAN.

**[NO FURTHER TEXT ON THIS PAGE]**

5

106884497.1

Intending to be fully bound, Borrower has executed this Note effective as of the day and year first above written.

**Borrower:**

_____
Terri Kraut-Karasick

_____
Yitzchok Karasick

106884497.1