# Exhibit D

## PLEDGE AND SECURITY AGREEMENT

This PLEDGE AND SECURITY AGREEMENT (this "**Agreement**") is made and entered into to be effective as of _____, 2026, by and among, on the one hand, Yitzchok Karasick ("**Yitzi**") and LC Avia Manager LLC, a Delaware limited liability company ("**Manager**" and collectively with Yitzi, "**Pledgor**"), and on the other hand, Cogar Ventures LLC, a Delaware limited liability company (together with its successors and assigns in such capacity, "**Lender**").

### RECITALS:

**WHEREAS**, Lender made a loan in the original aggregate principal amount of Three Hundred Thousand Dollars ($300,000.00) (the "**Loan**") evidenced by that certain Promissory Note dated November 3, 2025, made by made by Yitzchok Karasick and Terri Kraut-Karasick (collectively, "**Borrower**"), to Lender (as the same may be amended, modified, restated, severed, consolidated, renewed, replaced, or supplemented from time to time, "**Note**"), and a mortgage executed by Terri Kraut-Karasick (the "**Security Instrument**") on, among other things, the real property as more fully described in the Security Instrument (the "**Property**");

**WHEREAS**, each Pledgor is the legal and beneficial owner of direct membership interests in LC Avia Investors III LLC (the "**Company**") and Manager is the manager of the Company;

**WHEREAS,** the Company is entitled to a tax refund in excess of $400,000.00 ("**Tax Refund**") that constituted a refund of a tax withholding in connection with a sale of real property by the Company;

**WHEREAS**, the Loan has matured and concurrently herewith is being restructured in accordance with the terms of that certain Modification Agreement of even date herewith;

**WHEREAS,** it is a condition precedent to Lender's agreement to enter into the Modification Agreement that Pledgor execute and deliver this Agreement to Lender;

**NOW, THEREFORE**, in consideration of the premises herein and to induce Lender to enter into the Modification Agreement, Pledgor hereby agrees with Lender as follows:

1. **Defined Terms**.

    a. <u>Definitions</u>.  As used in this Agreement, the following terms have the meanings set forth in or incorporated by reference below:

    "**Code**" means the UCC from time to time in effect in the State of New Jersey.

    "**Collateral**" means all future distributions by the Company to Pledgors, including, without limitation, the distribution of proceeds from the Tax Refund, and all Proceeds thereof.

    "**Debt**" means the obligations owed under the Loan Documents.

109343144.2

Docusign Envelope ID: 7557F34F-EBD3-4250-B7B4-85D89ED367BB

"**Loan Documents**" means the Note, this Agreement, the Guaranty, the UCC-1 Financing Statement and the other documents and instruments entered into in connection with the Loan.

"**Proceeds**" means all "proceeds" as such term is defined in 9.1-102(a)(64) of the Code in effect on the date hereof and, in any event, shall include, without limitation, all dividends or other income from the Pledged Securities, collections thereon or distributions with respect thereto.

"**UCC**" means the Uniform Commercial Code.

"**UCC-1 Financing Statements**" has the meaning ascribed to such term in **Section 9**.

b.        Other Terms. The words "hereof", "herein" and "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement, and section, subsection, schedule and exhibit references are to this Agreement unless otherwise specified. The word "including" when used in this Agreement shall be deemed to be followed by the words "but not limited to."

2.        **Pledge; Grant of Security Interest**. Each Pledgor hereby pledges and grants to Lender, as collateral security for the prompt and complete payment and performance when due (whether at the stated maturity, by acceleration or otherwise) of the Debt, a first priority security interest in all of Pledgor's right, title and interest to:

a.        the Collateral;

b.        all "accounts," "deposit accounts," "general intangibles," "instruments," "securities," and "investment property" (in each case as defined in the Code) constituting or relating to the foregoing; and

c.        all Proceeds of any of the foregoing (including, without limitation, any proceeds of insurance thereon).

3.        **Intentionally Omitted**.

4.        **Representations and Warranties**. Pledgor represents and warrants as of the date hereof that:

a.        Pledgors are the only members entitled to receive a distribution from the proceeds of the Tax Refund, all other members of the Company have previously received credits or distributions equal to their proportionate share of the tax withholding;

b.        As of the Closing Date, no authorization, consent of or notice to any other Person (including, without limitation, any member, partner or creditor of Pledgor or Borrower) that has not been obtained, is required in connection with the execution,

2

109343144.2

delivery, performance, validity or enforceability of this Agreement including, without limitation, the assignment and transfer by Borrower of any of the Collateral to Lender or the subsequent transfer thereof by Lender pursuant to the terms hereof;

c.    Pledgor is the record and beneficial owner of, and has good and marketable title to, its membership interest in the Company, including, without limitation, all rights to distributions from the Company, in each case free of any and all Liens or options in favor of, or claims of, any other Person, except the Lien created by this Agreement;

d.    upon the filing of the UCC-1 Financing Statements referred to herein, the Lien granted pursuant to this Agreement will constitute a valid, perfected first priority Lien on the Collateral and related Proceeds in such jurisdictions, enforceable as such against all creditors of Pledgor and any Persons purporting to purchase any such Collateral and related Proceeds from Pledgor;

e.    the principal place of business and chief executive office of each Pledgor is located at: 75 Thames Blvd, Bergenfield, New Jersey 07621.

f.    the exact name of each Pledgor is, and at all times has been, as stated in the recitals; and

5.    **Covenants**.  Pledgor covenants and agrees with Lender that, from and after the date of this Agreement until the Debt (exclusive of any indemnification or other obligations which are expressly stated in any of the Loan Documents to survive satisfaction of the Note) is paid in full:

a.    Distribution of Tax Refund.  Promptly upon receipt of the Tax Refund, Manager shall cause the Company to distribute the same to Pledgors in accordance with their membership interests.  Each Pledgor hereby instructs the Company to pay a portion of the Tax Refund in the amount of $375,000.00 directly to Lender in accordance with Lender's instructions.

b.    Negative Covenants.  Without the prior written consent of Lender, Pledgor shall not, directly or indirectly (i) sell, assign, transfer, exchange or otherwise dispose of, or grant any option with respect to, the Collateral, or (ii) create, incur, authorize or permit to exist any Lien or option in favor of, or any claim of any Person with respect to, any of the Collateral, or any interest therein, except for the Lien provided for by this Agreement.  Pledgor shall defend the right, title and interest of Lender in and to the Collateral against the claims and demands of all Persons whomsoever.

c.    Filing.  At any time and from time to time, upon the reasonable written request of Lender, and at the sole expense of Pledgor, Pledgor shall promptly and duly give, execute, deliver, file and/or record such further instruments and documents and take such further actions as Lender may reasonably request for the purposes of obtaining, creating, perfecting, validating or preserving the full benefits of this Agreement and of the rights and powers herein granted including, without

3

109343144.2

limitation, filing UCC financing or continuation statements, provided that the amount of the Debt shall not be increased thereby. Pledgor hereby authorizes Lender to file any such financing statement or continuation statement without the signature of Pledgor to the extent permitted by law. If any amount payable under or in connection with any of the Collateral shall be or become evidenced by any promissory note, other instrument or chattel paper, such note, instrument or chattel paper shall be promptly delivered to Lender, duly endorsed in a manner satisfactory to Lender, to be held as Collateral pursuant to this Agreement.

d.  <u>Limitation on Liens</u>. Pledgor will not create, incur or permit to exist, will defend the Collateral against, and will take all such other action as is necessary to remove, any Lien or claim on or to the Collateral , other than the Liens created hereby, and will defend the right, title and interest of Lender in, to and under the Pledged Securities against the claims and demands of all Persons whomsoever.

e.  <u>Changes in Location, Name, etc</u>. Pledgor will not, unless (i) it shall have given forty-five (45) days' prior written notice to such effect to Lender and (ii) all action reasonably necessary or advisable, in Lender's opinion, to protect and perfect the Liens and security interests intended to be created hereunder with respect to the Pledged Securities shall have been taken, (A) change the location of its chief executive office or principal place of business, or (B) change its name, identity or structure, or (C) reorganize or reincorporate under the laws of another jurisdiction.

6.  **Cash Dividends; Voting Rights**. Pledgor shall be permitted to exercise all voting and regular membership interests with respect to the Company, provided that no vote shall be cast or right exercised or other action taken which, in Lender's reasonable judgment, would impair the Collateral or which would be inconsistent with or result in any violation of any provision of the this Agreement or any other Loan Documents.

7.  **Rights of Lender**.

a.  If an Event of Default shall occur, Lender shall have the right to receive any and all income, cash dividends, distributions, proceeds or other property received or paid in respect of the Collateral and make application thereof to the Debt, in such order as Lender, in its sole discretion, may elect, in accordance with the Loan Documents.

b.  The rights of Lender under this Agreement shall not be conditioned or contingent upon the pursuit by Lender of any right or remedy against Pledgor or against any other Person which may be or become liable in respect of all or any part of the Debt or against any other security therefor, guarantee thereof or right of offset with respect thereto. Lender shall not be liable for any failure to demand, collect or realize upon all or any part of the Collateral or for any delay in doing so, nor shall it be under any obligation to sell or otherwise dispose of any Collateral upon the request of Pledgor or any other Person or to take any other action whatsoever with regard to the Collateral or any part thereof.

4

109343144.2

c.    Upon satisfaction in full of the Debt and payment of all amounts owed on the Note, Lender's rights under this Agreement shall terminate and Lender shall deliver to Pledgor UCC-3 termination statements or similar documents and agreements to terminate all of Lender's rights under this Agreement and all other Loan Documents.

d.    The powers conferred on Lender hereunder are solely to protect Lender's interest in the Collateral and shall not impose any duty upon Lender to exercise any such powers. Lender shall be accountable only for amounts that it actually receives as a result of the exercise of such powers.

e.    If Pledgor fails to perform or comply with any of its agreements contained herein and Lender, as provided for by the terms of this Agreement, shall itself perform or comply, or otherwise cause performance or compliance, with such agreement, the expenses of Lender incurred in connection with such performance or compliance, together with interest at the Default Rate if such expenses are not paid on demand, shall be payable by Pledgor to Lender on demand and shall constitute obligations secured hereby.

8.    **Remedies**.

a.    If an Event of Default shall occur, Lender may exercise, in addition to all other rights and remedies granted in this Agreement and in any other instrument or agreement securing, evidencing or relating to the Debt:

   i.    all rights and remedies of a secured party under the Code (whether or not said Code is in effect in the jurisdiction where the rights and remedies are asserted) and such additional rights and remedies to which a secured party is entitled under the laws in effect in any jurisdiction where any rights and remedies hereunder may be asserted, including, without limitation, to exercise all powers of ownership pertaining to the Collateral as if Lender were the sole and absolute owner thereof (and Pledgor agrees to take all such action as may be appropriate to give effect to such right);

   ii.    Lender may make any reasonable compromise or settlement deemed desirable with respect to any of the Collateral and may extend the time of payment, arrange for payment in installments, or otherwise modify the terms, of any of the Collateral;

   iii.    Lender in its discretion may, in its name or in the name of any Borrower or otherwise, demand, sue for, collect, direct payment of or receive any money or property at any time payable or receivable on account of or in exchange for any of the Collateral, but shall be under no obligation to do so.

b.    Without limiting the generality of the foregoing, Lender, without demand of performance or other demand, presentment, protest, advertisement or notice of any

5

kind (except any notice required by law referred to below or otherwise required hereby or in any Loan Document) to or upon Pledgor, Borrower or any other Person (all and each of which demands, presentments, protests, advertisements and notices, or other defenses, are hereby waived to the extent permitted under applicable law), may in such circumstances forthwith collect, receive, appropriate and realize upon the Collateral, or any part thereof.

c.    The rights, powers, privileges and remedies of Lender and Lender under this Agreement are cumulative and shall be in addition to all rights, powers, privileges and remedies available to Lender and Lender at law or in equity. All such rights, powers and remedies shall be cumulative and may be exercised successively or concurrently without impairing the rights of Lender or Lender hereunder.

9.    **Financing Statements; Other Documents**. On the date hereof, Pledgor shall deliver to Lender a UCC-1 financing statements with respect to the Collateral, suitable for filing in such jurisdictions as Lender shall request ("**UCC-1 Financing Statements**"). Pledgor agrees to deliver any other document or instrument which Lender may reasonably request with respect to the Collateral for the purposes of obtaining or preserving the full benefits of this Agreement and of the rights and powers herein granted.

10.    **Miscellaneous**.

a.    Severability. Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

b.    Headings. The headings used in this Agreement are for convenience of reference only and are not to affect the construction hereof or be taken into consideration in the interpretation hereof.

c.    Successors and Assigns; Governing Law. This Agreement shall be binding upon and shall inure to the benefit of Pledgor and the respective successors and assigns of Pledgor and shall inure to the benefit of Lender, and its successors and assigns, but Pledgor shall have no right to assign its rights hereunder. This Agreement shall be governed by, and construed and interpreted in accordance with, the law of the State of New Jersey.

d.    Irrevocable Authorization and Instruction to Borrower. Pledgor hereby authorizes and instructs the Company to comply with any instruction received by it from Lender in writing that (i) states that an Event of Default has occurred and is continuing beyond any applicable notice and cure periods set forth in the Loan Documents and (ii) is otherwise in accordance with the terms of this Agreement, without any other or further instructions from Pledgor, and Pledgor agrees that Borrower and any servicer shall be fully protected in so complying.

6

e.  <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts and all the counterparts taken together shall be deemed to constitute one and the same instrument.  Delivery of a signature of this Agreement by facsimile transmission or by .pdf, .jpeg, .TIFF or other form of electronic mail attachment and other electronic signatures (including, without limitation, DocuSign and AdobeSign) shall be effective as delivery of a manually executed counterpart hereof prior to and in the absence of manual delivery.  The use of electronic signatures and electronic records (including, without limitation, any contract or other record created, generated, sent, communicated, received, or stored by electronic means) shall be of the same legal effect, validity and enforceability as a manually executed signature or use of a paper-based record-keeping system to the fullest extent permitted by applicable law.  Each party hereto hereby waives any defenses to the enforcement of the terms of this Agreement based on the form of its signature, and hereby agrees that such electronically transmitted or signed signatures shall be conclusive proof, admissible in judicial proceedings, of such party's execution of this Agreement.

f.  **<u>WAIVER OF JURY TRIAL, DAMAGES, JURISDICTION</u>.  PLEDGOR AND LENDER EACH HEREBY AGREES TO WAIVE ITS RIGHTS TO A JURY TRIAL ON ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT, THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT, OR ANY DEALINGS BETWEEN PLEDGOR AND LENDER.  THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS.  PLEDGOR AND LENDER EACH ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO LENDER TO ENTER INTO A BUSINESS RELATIONSHIP WITH PLEDGOR.  PLEDGOR ACKNOWLEDGES THAT IT HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL, AND THAT SUCH WAIVER IS KNOWINGLY AND VOLUNTARILY GIVEN FOLLOWING CONSULTATION WITH LEGAL COUNSEL.  THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED, EITHER ORALLY OR IN WRITING, AND THE WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, REPLACEMENTS, REAFFIRMATIONS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT, OR ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT.  IN THE EVENT OF LITIGATION, THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.**

7

109343144.2

Docusign Envelope ID: 7557F34F-EBD3-4250-B7B4-85D89ED267BB

g.    <u>Joint and Several Liability</u>.  If Pledgor consists of more than one person or party, the obligations and liabilities of each such person or party hereunder shall be joint and several.

**[SIGNATURES COMMENCE ON THE FOLLOWING PAGE]**

109343144.2

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized officers as of the date set forth above.

**PLEDGOR:**

Signed by:

07A186909D43447...

**YITZCHOK KARASICK**, individually

**LC AVIA MANAGER LLC**, a Delaware limited liability company

Signed by:

By:_____
07A186909D43447...
Name: Yitzchok Karasick
Its: Sole Member

9

109343144.2

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Andrea Clay, Esq.          4152482124

**B. E-MAIL CONTACT AT FILER (optional)**
AClay@Polsinelli.com

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

Andrea Clay, Esq.
Polsinelli
Three Embarcadero Center, Suite 2400
San Francisco, CA 94111
US

State of New Jersey
Department of the Treasury
Division of Revenue & Enterprise Services
UCC Section
Filed

Filing Number:58410165

05/22/26 19:44:34

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

---

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| LC AVIA MANAGER LLC | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 1c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 2 University Plaza Suite 600 | Hackensack | NJ / 07601 | US |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| KARASICK | YITZCHOK | | |
| 2c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 75 Thames Blvd. | Bergenfield | NJ / 07621 | US |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| COGAR VENTURES LLC | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 3c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 755 N. Alfred Street Unit D | Los Angeles | CA / 90046 | US |

4. COLLATERAL: This financing statement covers the following collateral:

See attachment.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

| 9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐ | State of New Jersey<br>Department of the Treasury<br>Division of Revenue & Enterprise Services<br>UCC Section<br>Filed |
|---|---|
| **9a. ORGANIZATION'S NAME**<br>LC AVIA MANAGER LLC | |
| OR   **9b. INDIVIDUAL'S SURNAME**<br><br>FIRST PERSONAL NAME<br><br>ADDITIONAL NAME(S)/INITIAL(S)    SUFFIX | Filing Number:58410165<br><br>05/22/26 19:44:34<br><br>**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY** |

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

|  | 10a. ORGANIZATION'S NAME |  |  |  |  |
|---|---|---|---|---|---|
| OR | 10b. INDIVIDUAL'S SURNAME |  |  |  |  |
|  | INDIVIDUAL'S FIRST PERSONAL NAME |  |  |  |  |
|  | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) |  |  |  | SUFFIX |
| 10c. MAILING ADDRESS |  | CITY | STATE | POSTAL CODE | COUNTRY |

11. ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

|  | 11a. ORGANIZATION'S NAME |  |  |  |  |
|---|---|---|---|---|---|
| OR | 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) |  | SUFFIX |
| 11c. MAILING ADDRESS |  | CITY | STATE | POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

| 13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable) | 14. This FINANCING STATEMENT:<br>☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing |
|---|---|
| 15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest): | 16. Description of real estate: |

17. MISCELLANEOUS:
The filer attests that the Collateral set forth in this Financing Statement is within the scope of the New Jersey Uniform Commercial Code-Secured Transactions pursuant to N.J.S.A. 12A:9-102 and N.J.S.A. 12A:9-109, as required by N.J.S.A. 12A:9-502.

UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

EXHIBIT A

(Description of Collateral)

The Collateral consists of the property, rights, interests and estates described below which are now owned, or are hereafter acquired, by Debtor. Unless otherwise defined herein or unless otherwise required by the context hereof, capitalized terms used herein will have the meanings ascribed to those terms in that certain Pledge and Security Agreement executed by Debtor in favor of Secured Party:

    (a)    all future distributions by the Company to Debtor, including, without limitation, the distribution of proceeds from the Tax Refund, and all Proceeds thereof.

"Company" means LC Avia Investors III LLC.

"Tax Refund" means the tax refund to which the Company is entitled.

"Proceeds" means all "proceeds" as such term is defined in 9.1-102(a)(64) of the Code in effect on the date hereof and, in any event, shall include, without limitation, all dividends or other income from the Pledged Securities, collections thereon or distributions with respect thereto.

2

111295564.1

 **COGENCY**GLOBAL®

**Report Date: May 22, 2026**
Andrea Clay
Polsinelli
**Client Reference: Cogar Loan**
**Order #: 3184930**

# UCC Filing Report

| DEBTOR | STATE | FILING OFFICE | TYPE | FILE NUMBER | FILE DATE | STATUS |
|---|---|---|---|---|---|---|
| LC AVIA MANAGER LLC | NJ | Division of Revenue and Enterprise Services | UCC-1 Filing - Central | 58410165 | 05/22/2026 | Item Complete |

Reasonable care is exercised in the completion of service requests. Please confirm the accuracy of the name(s) noted above. This report is provided for general informational purposes only and should not be relied upon as legal advice. Cogency Global Inc. ("We") assumes no liability with respect to the identity of any party named or referred to in this report, nor with respect to the validity, accuracy, completeness, legal effect or priority of any matter shown herein. We make no representation, warranty or guarantee as to the information contained in public records. Responsibility for the accuracy and completeness of any public record rests with the filing officer.